read your briefs, the authority cited in your briefs, we've looked at portions of the record. You don't have a lot of time this morning and the limited time that you do have, you should get straight to the heart of your argument. You're not going to be waiving anything by not addressing something because it's in your briefs. We're probably going to have some questions but be mindful of the traffic lights. When the red light shines, it's time to stop. Don't worry, as Judge Edmondson used to say, don't treat the red light as aspirational. Now if you answer your question from the court, you can finish your answer and you won't lose rebuttal time if that's something you have. Let's begin with Williams v. Beckinshire, Mr. Frank. Thank you, Your Honor. May it please the court, I'm Ted Frank for the Objector-Appellant. This is a settlement where the attorneys are getting $2.9 million and the class is getting $1.1 million and that's problematic under Rule 23E2C2 and 3 but the District Court didn't consider Rule 23E2C2 and 3 at all. That by itself is error under Johnson v. MPAA. Before you get to that, it would help me if you could talk a little bit about jurisdiction. The jurisdictional problem with regard to the injunctive relief seems to me, just talking for myself, to be a real and substantial problem. The injury, when we're talking about injunctive relief, with prospective kind of relief, we're not talking about the damages and I had trouble seeing what was actual and imminent about the purchase in the future and how an injunction was properly before the court when it tried to determine whether the settlement was fair and reasonable. I agree, Your Honor. I think what's pled in the complaint does not allege a certainly impending injury and whether they can correct that on remand by repleting, saying the magic words that Davidson in the Ninth Circuit said was appropriate, that's 889F3rd, and finding new class representatives, that's a question this Court hasn't reached. But given that they can replete, they can find new class representatives and come back with the exact same settlement, I would encourage the Court to reach the 23E issues to avoid the problem of- I agree, Your Honor. And if there's no standing with respect to the injunctive relief, then a settlement that otherwise was characterized as being fair and reasonable may no longer be fair and reasonable if the judge considered both the damages and the injunctive relief in trying to put a value on the matter. So it seems to me there's a problem here if that's the case. I agree, Your Honor. I mean, how could it be fair? Wouldn't it necessarily be an abuse of discretion if you had included within the calculus of fair and reasonable injunctive relief and they weren't entitled to it? I think that's right, and that's very similar to the argument we made why the injunctive relief shouldn't be considered, consideration for the release of the class's damages claims, retrospective damages claims. And we made that argument extensively. If we phrase it as an Article III argument, I think the result is the same, except they have to go back and replete things, which I think they can do if this Court adopts Davis. Help me with this. Let's assume for the purpose of my question, and just assume that there was a problem with injunctive relief because where they pled didn't come close to showing actual or imminent injury. All they said is, we'll buy this product in the future if A and B and C, to it if it worked. Oh, by the way, we don't think it works. It strikes me as utterly inchoate. There's nothing actual or imminent about it. So let's assume that's right. And therefore, the settlement has to be vacated, has to go back for a new determination of whether it's fair and reasonable. Help me with the second issue in the case regarding standing. Certainly. The named plaintiffs bought products A and B, but not product C, right? That's correct. And I think that's... Can they pursue and properly represent the unnamed class members as to the purchase of the third item? They can if the class is certified correctly, because then the Court is making a claim that their claims are typical of the third product. So for example, if they suffered the same economic injury, that's what they have alleged. And I think it's a question of class certification. Of course, the District Court didn't actually certify the class, as we noted in our reply brief. Can I ask about that, Mr. Frank? So is there a class absent the certification, the final certification? I think the correct answer is no, there isn't. And there would have to be a remand regardless, but I think the Court should reach the 23E issues to guide the Court on that remand. So there's no language in the settlement agreement that was adopted by the District Court. I didn't see any language in the R&R purporting to certify a final class. Is that correct? That is correct. That's yet another problem with the R&R and another problem with the settlement approval. Right. But what I guess I want to just probe a little bit further with you is, you can certify a class, maybe you'd need subclasses, but what do you do with the named plaintiffs on the third product who have something in common? They sustain the same injury in some respects as to the third product, but the injuries are disparate as to other things relating to the third product. For example, the claim is the coffee cherry extract has these qualities that yield better performance, et cetera, et cetera, et cetera. That's a common element in all three. And they claim, it seems to me, that's common to all three that a misrepresentation that was made here included that these three products were scientifically or clinically tested, when in truth and in fact the allegation is none of them were scientifically or clinically tested. Those may be common, and the injury may be essentially the same, but then you have in this claim that each of the three products essentially work. And to prove that the third product works or doesn't work requires a different calculus than to prove that the first two do or do not work. So the named plaintiffs have some injuries in common and some disparate. How would a judge address that problem when he or she was looking at certification? The question is, are the claims typical of the rest of the class or is the third product materially different in terms of what would have to be? Right, but I asked the question in a different way, Mr. Frank. Bear with me. I'm asking the question in terms of Article III standing as opposed to commonality, typicality, and adequacy. If there is commonality, typicality, and adequacy, then there is standing. If there is not commonality, typicality, and adequacy, then there is not only not standing, the classrooms have been certified. So it should be a World 23 certification issue. Mr. Frank, can I ask you questions about the merits or the substance of the settlement? So you made a lot of concerns with the kicker and the clear sailing provisions. Can you also explain to me the cancellation clause here? Because it seemed more problematic than the one in Arkin that this court said was not fair and reasonable. Certainly, if there were too many claims, the defendants had the right to cancel the settlement. So that gave the plaintiffs an incentive to not seek out. Chronologically, I didn't understand that, though, because the settlement basically said the court could, in her final judgment approving the settlement, the period continues to run, right, for claims to accumulate. And then the defendants had the unilateral right to, what, rescind the settlement. What does that do with the final judgment? I don't understand how that operates. You would have to ask the parties. I think it's largely moot because the parties knew they would never get that many claims. It was just, I don't know why they included that clause, and you would have to ask them. And I think that's the importance of the difference between looking at what's made available and what's actually recovered by the class, as I think Rule 23E2C2 requires a court to look at. The $8 million was fictional, and the parties knew it was fictional. This is just like Arkin v. Pressman, where this court said it was actually an ethical violation to try to maximize your attorney's fees by using the illusion of relief like that. If it, that's Bresenio v. Henderson, 998 F3rd 1014 is directly on point, so is Pearson 772 F3rd 778. These are cases where the parties made tens of millions of dollars available, but actually distributed a tiny, tiny fraction of that to the class, as happened here, where the class is getting a fraction of what the attorneys are getting. And, you know, we're not here saying the class should have gotten $8 million. If the case settled for $4 million and the class got $3 million and the attorneys got $1 million, we wouldn't be here. But the disproportion where the attorneys are getting at least 70% of the settlement benefit makes the settlement unfair under Rule 23E2C3, and the court didn't address that at all, together with the other problematic aspects, clauses of the settlement that were red flags under Bresenio, under Bluetooth, under Pearson, but that the district court erroneously considered benefits. I will reserve the rest of my time for rebuttal. Okay, Mr. Frank, you've got four minutes for rebuttal. Ms. Geer. Thank you. My name is Martha Geer of the Millbrook Law Firm. I represent plaintiffs and the plaintiff class. You might move the mic a little closer, Ms. Geer. Thank you. Thank you. I'm short. First, Judge Mizell, I would like to mention with respect to the class certification, the class was certified in the preliminary approval order. Is that sufficient for Rule 23 purposes? Yes, it is, Your Honor, in a settlement context. The court had to consider all of the relevant issues for certification under Rule 23, and did so in the preliminary approval order. So, there's no need to do a final certification to make the findings that something is sufficient for a class? No, I don't believe so, Your Honor. No one's really raised that issue, right? That's correct. So, let's talk about standing with respect, particularly to this injunctive relief. So, the class representatives would like to purchase the defendant's products if they truly improve brain performance. So, they're not going to buy worthless products. They would only want to buy effective products. I don't understand how the injunctive relief toward the existing products is likely to redress any injury that the class representatives who only want to buy effective products would suffer. I don't get this. I don't understand how this injunction redresses anything. Your Honor, it addresses it because this follows along, it does follow the Davidson analysis in the Ninth Circuit. What the injunctive relief Davidson is talking about is, you know, they were talking about wipes, and the wipes claimed that they were flushable, advertised they were flushable, and they were not flushable. What this case is about is ingredients that have been claimed to have been clinically proven to be effective, not the product, but the ingredients. They were clinically proven to be effective, that they were scientifically proven to be effective. And what the plaintiffs have alleged in the complaint is that if they could trust in the future state representations that were made by the defendant regarding, in this instance, the ingredients themselves, that they have been, if they had representations instead of proven said, shown. Your clients aren't going to buy ineffective products, right? Actually, Your Honor, when it comes to brain supplements, where you can't have a definitive statement that this is going to be effective, and that's what was so important about the statements that were made on the products that were not true. If, in fact, one of the things that they... They're not going to buy the products that are being sold now, right? No. They know those don't work. That's correct. They're worthless. That's correct. So the only interest they have would be to buy some products that are actually effective. Actually, let me correct myself. It is not that they won't buy the products because they know they don't work. This is not a product defect case. This is a false advertising case, and the false advertising was... And the court's enjoining the defendants from making false representations about the existing products that your clients aren't going to buy. That's not correct, Your Honor. What our clients allege is that they would buy these products. It's not... The future? These products? This case... But you just agreed with me that they won't. I'm sorry that I misspoke, Your Honor. What this case is about is not whether or not these products work. This case is about statements that they are clinically... The ingredients are clinically proven to work. If what happens in terms of... Your clients know these products are worthless. Our clients know that these products, these ingredients have not been proven to work. Not necessarily worthless, but they haven't been proven to work. About that, the complaint alleged that they're essentially worthless. The complaint alleges that... Well, what the... Let me see. The complaint does allege that they are worthless. It is the way you allege damages. Either we would not... We would not have purchased them at all, or you would pay... It's the classic question. We would have paid the market value. But the real... What the issue is here with respect to the settlement is the settlement establishes now that these products no longer say anything other than clinically tested, which is true. That is true. If in the future... The value to your clients, though. How is that of any value to your client? Our clients can... Does it redress their harm? Our clients can know what they are purchasing. We can't say that these products don't work. There are studies, as the defendant has shown, which is one of the things that led to the settlement that has shown, that show that there is some evidence to suggest that this, in fact, these products will, in fact, they have some effect. We don't know definitively. It is not proven. If they are... If in the future, going forward, they are able to cite to studies that do show that there is a definite effect of these products, they can then say shown. Let me ask the question. That matters. Let me ask you the question this way. Everyone agrees the seminal case on standing is Lujan. Everything has pretty much flowed from that. In that case, Justice Scalia, writing for the court, says the plaintiff must have suffered an injury in fact. And it has to be concrete and particularized. That's not enough. He then says it has to be actual or imminent, not conjectural or hypothetical. And in that case, interestingly enough, the plaintiffs raise the very same kind of question because the plaintiffs claim we're going to go back to these parks and this problem that we assert will be seen and we will sustain injury based on it. Justice Scalia, writing for the court, says the following. And I cite it to you because it strikes me as bearing directly and immediately on this prospect of relief that you seek by way of injunction. He writes, the affiant's profession of an intent to return to places they had visited before, where they will presumably this time be deprived of the opportunity to observe animals of the endangered species is simply not enough. Someday intentions without any description of a concrete plan or indeed even any specification of when the someday will be do not support a finding of the actual or imminent injury that our case is required. Now, I look closely at the complaint. And as I read it, the assertion is, we'll buy the product in the future when and if we're satisfied that it's proven to work. That strikes me as a good distance away from the requirement of actual and imminent. What am I missing? One thing, Your Honor, I don't think it's the allegations are saying that it's proven to be effective. That's what the whole case is about, is you can't say proven science. You can say it's been shown in some studies. But let me also mention with respect to Lujan, with respect to the evidence that Justice Scalia was relying on. Lujan says that you look at, you treat the issue of So after trial and transunion, you look at all the evidence at trial. At summary judgment, you treat the evidence presented applying the same standard. How does that help you here? This is done at the complaint standard. There hasn't even been a motion to dismiss. I take your point. The problem that I have, it is you might not drill down into the question of rigorously at the complaint stage for a lot of good reasons. But it seems to me the law is pretty clear that at the end of the rainbow, when you're at the point of a final settlement, at that point, the district court has to drill down and ask the standing question. And there must be some showing that the injury is actual or imminent. And it strikes me that the claim, and I looked at the assertions that you made in the complaint, the claim that you would buy the product at an unspecified time, under unspecified circumstances, if you had some sense that product was properly tested or the product was shown to be X, Y, and Z. But it strikes me that each of those are exceedingly attenuated possibilities that are a far cry from actual or imminent. What is there in the evidential foundation or in the complaint, which I agree is all we really have here, that makes this actual or imminent? That is explained by Davidson. These allegations are carbon copy with what was in the Davidson decision. And that is, and even more so here, because we have existing products. And if they correct the language on the labels, and if they get to a point where they can say that they are being shown, then people can make a decision. Actually, I wanted to mention one thing, because we haven't had a chance to brief it. One consideration is whether this is even an Article III standing question. And whether, because- These questions have been Article III standing questions. I understand your honor. But what, they have been, but not in this context of when you have a settlement. The question, the way Article III standing plays out is that you we could file a state court, get injunctive relief. What prevents parties from then settling the federal damages claim simultaneously with the state injunctive relief claims in a single settlement agreement? That does not invoke authority. I can't. We don't. Our law and the law that binds us does not govern what's going to happen in a state court. And frankly, I could care less what happens in a state court. We're bound by the Constitution of the United States in Article III that requires a case for controversy that the Supreme Court has told us means that there has to be standing, that there has to be actual imminent injury, there has to be traceability and redressability. And it matters not to me how that would play out in state court. I understand your honor, and I'm not being clear. This is not an order of court. This is a settlement that was reached by the parties in a private agreement. And that's why we cited the Highland case by the Second Circuit, which in a footnote, acknowledged that Article III standing is not. So you're saying there's no injunction here? No, it's an enforcement. There will be an order basically enforcing the agreement and saying it proves it. And then going forward, there is not. Okay. You've gone way over. Oh, and you've got co-counsel who's got some time we need to get to. One thing I would like to respectfully request, since these are, um, this is a question of first impression for the court, is that the court allows supplemental briefing on this year. If we need supplemental briefing, we'll, we'll ask for it. Thank you. Appreciate it. Um, Mr. Cyphers. Yeah. Good morning, your honors. May it please the court. Charles Cyphers on behalf of the record appellees. You know, if I may, I would like to start by addressing the question that I think is, is troubling the panel and explain why on the face of this complaint, there is an actual and imminent injury alleged as to future purchasing. Got a tough road. Please do help me. Yeah. Let me give it a shot. So the, the key allegation that the panel has identified is an allegation that the product is worthless, but, but, but let me provide some context to that allegation. Well, there's more than that. It's not only that the existing products are worthless, but that you're, but the plaintiffs want to buy products that are actually effective, um, products, right. And we have an injunction about existing products that the, that the plaintiffs don't want to purchase. And I don't, and, and, and nothing about what, what they want to purchase in the future. So I don't, I don't think that's a fair construction to complain. And let me point to specific parts of the record that I helped, I think helps me out here. So, so the key theory of this case is that the claim clinically proven misleadingly communicates to consumers that there's scientific consensus around the extent of Nariva's efficacy. And this is at tab R51, paragraph 65, 67, 82, 85, 91, 111, 117, 124, 125. That is the core theory of the complaint. The complaint goes on to admit with allegations that Nariva is effective in some fashion. Paragraph 87 describes how it's effective in certain populations. Paragraph 91 describes how a particular, there's a dispute about dosage, that the dosage might be at issue, but, but the ingredient itself is effective. Paragraph 114 talks about how Nariva's own science... Does the complaint allege that the plaintiffs want to purchase these products? I think the fairest reading of the complaint is that they would purchase these products if in their view, they were accurately labeled such that they could make an informed purchase. Well, let me read you exactly what the complaint says on the point and help me, help me with it. As best I could tell, the only allegation with regard to potential future harm is that quote, they quote, would like to purchase the defendant's products if they truly improve brain performance, end quote, but are quote, unable to rely on the defendant's representations regarding the effectiveness of defendant's products in deciding whether to purchase defendant's products in the future, whether deciding to purchase it. So there isn't even a commitment to buy it at some unspecified time. It's, we would buy it if A and or B and or C transpire. Have I misread that or misunderstood that critical allegation? I, I, I think you have Judge Marcus, and let me try to explain why. What this, the import of this communicates some level of consensus that, that they disagree has been shown, but a, a different claim, a claim that the product has been clinically tested, which is true and undisputable would be information that would allow them to make an informed purchase. And, and one of the reasons why don't we make up the, the, the language that Judge Marcus read to you, that they would like to purchase defendant's products if they truly improved brain performance, which they allege these products do. I, I, I, I don't think that is again, reading the complaint in full. I don't think that's a fair characterization of the complaint. I mean, these record sites that I just identified are admissions by the plaintiffs that Nareva functions in some form and it truly is that they truly improve brain performance. I, I think that's right. It's just simply that it does not in plainest view. And of course we dispute this and we put an expert testimony that shows that the clinically proven claim was valid and substantiated, but, but they're, I think, simply alleging that the clinically proven claim indicates a degree of efficacy that they think is misleading. Whereas the clinically tested claim does not. And changing the, the, the products label in this fashion will allow an informed purchase. And I, if I don't, they allege that these products are worthless. And I want to speak to that exact issue because the allegation that the products are worthless, I think is a boilerplate allegation meant to preserve a particular form of damages relief. I mean, it's, this is, you know, it's not our fault that if we're looking at where the showing of injury is, I mean, all we have to go on is an allegation that they are worthless, right? Correct. But, but let me point to other, other allegations in the complaint that contextualize that. So, so the worthlessness allegation I think is tied to this court's DeBernardis decision, which is a supplement case. And that allows in very narrow circumstances, a full refund for a product, which is normally not the form of relief you're entitled to if the product is deemed worthless. And this is a term of art that's repeated 17 times. That's money though. And what we're concerned about is the injunctive relief. Correct. But I think those two issues are tethered. I mean, the reason that the panel is concerned that they don't have standing is because if, if the complaint can be read to mean that the product they're saying the product is truly worthless from an economic perspective, then they've got no actual imminent injury. But yeah, why I think, I think they got an injury for, for past harm. But the settlement purports to give them redress for, for future harm. And that's where, where there's a problem. Well, the, the reason why I think we're correct as to the proper rating of the worthlessness allegation is because if you look at other portions of the complaint, and this is at record site 51 paragraph 129 and paragraph 131, they allege alternative theories of harm, namely that they would not have paid the price that was charged for the product or that the price was greater than it should have been. The issue we're talking about with injunctive relief is prospective. We want an injunction in the future to do A, B, C, or D. And you've got to show article three standing among other things as to this future conduct. So you've got to show an intention that's immediate, actual to buy this product in the future. And that's where I'm having my problem. I don't mean to be quibbling about it, but when I look back at Lujan, in that case, you actually had affidavits from the affiants expressly professing an intent to return. And the court says, even that's not enough because we do not know when, where, and under what circumstances. That's too evanescent. It's too hard to imagine. It doesn't give you the requisite immediacy to the problem. Here, you don't even have that much. You don't even have a profession that I will buy the product. It's, I will buy it if A and B and C. That's the problem that I'm having. Understood, Your Honor. But I think the closest decision and the complaint conforms to that decision is in the false advertising. And if I may, can I just finish? Please. In the false advertising context, if the plaintiff alleges that with a properly labeled label, with a properly labeled product, they would purchase it again, that is sufficient, certainly at the pleading stages, to confer standing. And that's the Davidson decision out of the Ninth Circuit. And you contend this complaint alleges that they would buy these products again? I do, Your Honor. I do, Your Honor, both. Where's that in the complaint? That is, I think. Can you read it for me? I'll give you some time. Of course. Paragraph 128, which is the worthlessness allegation, says that the defendant's story that cannot support or benefit brain performance as advertised. That's the key language in that complaint. And as advertised. And where's the language that say, we will buy that product, that very product, that worthless product, if it's properly advertised as worthless? Your Honor, so I'll concede that the paragraph on future purchase intent doesn't have those exact words. Or anything like it. But, Your Honor, the remainder of the complaint alleges a price premium theory and concedes repeatedly that Narita, as currently constituted, has effectiveness. Help me, you're over your time, but it would help me to have you address the following question. I want you to assume for the purpose of the question that we were to say there's no showing of standing as to the prospective relief. Therefore, to the extent the determination by the district court that the settlement was fair and reasonable has to be vacated and the district court's got to go back and do it again. And this time, in determining fair and reasonable value, they can't include what they did include on round one, the injunctive relief. That would be, it would be an abuse of discretion. This would have been an abuse of discretion, would require a remand. For that purpose, would it not, if we find that you were wanting an article three standing, right? Is there any way we could sustain this settlement if we were to conclude that you didn't say enough on standing? I think if the injunction is vacated, which is part of the settlement agreement, then yes, I have to concede that remand would be appropriate. Now, I don't disagree. No, I appreciate that. Let me ask you just one quick final question, which I had asked your colleague. Assuming we sent it back to the district court, what, if anything, ought we to say about the requirement that the named plaintiffs have sustained the same injury in kind as the unnamed members of the class? And how does that factor into a determination of whether the unnamed members of the class have sustained the same injury? Yeah. And, Judge Marcus, I think this is going to the first question in the panels or the unpurchased products, just not sure I understand the panel correctly, or your question correctly. There, I think the answer lies in this court's decision in Carter, where in the settlement approval contest, Carter was a class settlement. It involved defective guns. There were nine guns at issue in the name plaintiff that only purchased one of the nine guns. And there was a standing challenge on appeal. And on appeal, the settlement was approved with the 11th Circuit saying, we see no defects in standing. So I think under Carter, you could remand with instructions that so long as the plaintiffs allege they have an economic injury coextensive with purchasers of those other products, that would be sufficient. I think that would be right if their interests were indeed coextensive with the interests of the unnamed plaintiffs. The problem that I have is it struck me when I looked at the claims as to each of the three products that there were some things in common and some things that were disparate. What was in common was the allegation about this coffee extract in all three. But there were different elements in the three products, and so there were things in the third product that were not common to the first two products about which the allegation was made that that too was false and misleading. And it struck me that they didn't have the same interest with regard to the last part of it. How does a trial court handle that on a remand? I think the reason why there's coextensiveness on that issue, Judge Marcus, is the de-stressed product. And I believe this is at paragraph 55 of the complaint. The de-stressed product has the exact same clinically proven claim that was the gravamen in the complaint as to the other two products. So I think the allegation that the product is labeled in the same fashion is sufficient to confer this economic coextensiveness which would be permitted for purposes of approving the class. Thank you very much. Thank you, Mr. Sipos. Thank you, Your Honors. Mr. Frank, you've got four minutes. Do you want to use them? Thank you, Your Honors. I think what we just heard demonstrates that the perspective injunctive relief cannot be a benefit to compensate class members who are alleging retrospective injury. Maybe you could have a second subclass and one subclass, separately represented subclass, and they negotiate a separate settlement with a differentially alleged complaint, but the injunctive relief cannot be a benefit for the compensation of retrospective relief. This is not Davidson. The allegations in Davidson are materially different than what's alleged in paragraphs 139, 145, 151, and 157. Perhaps they could find new class representatives and make the Davidson allegations, but those class representatives would have different claims than the class representatives alleging retrospective damages and the need for retrospective relief. I would encourage the Court to reach the 23E2 issues because on remand, they will be able to construct a new complaint, perhaps with new class representatives, that addresses all of the class's concerns on standing and reach the same settlement, and it would help avoid a lot of repetitive litigation if the Court rules on the merits of the appeal for purposes of remand. Let me ask you just one question in the time that we have remaining. Your colleague made an interesting comment on this issue of whether there was actually a certification of a class here and asserted that there was. When we look in the record here, wasn't there a certification? Perhaps the certification could have been better. It could have been more precise. Maybe it could have broken it down into subclasses, but there was a certification, wasn't there? No, Your Honor. There was a Rule 23E1B ruling that said the Court could certify a class at some future point, and the Court did not actually do that. We didn't challenge class certification. I think on remand, the Court will just certify the class again, though perhaps— One might hope. It's going to be a different district judge, I'm pretty sure, since the district judge is no longer with us. Oh, I was not aware of that, Your Honor. I apologize. Okay. Do you have anything else, Mr. Frank? I'm happy to answer any of the Court's questions on the merits. Thank you. Thank you, Your Honor. We'll move to the second case.